J-S01040-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                                  :             PENNSYLVANIA
                                                  :

           v.                              :

TODD RICHARD FERRY             :
                                                  :
           Appellant             :     No. 1096 WDA 2025

Appeal from the PCRA Order Entered August 20, 2025
In the Court of Common Pleas of Bedford County Criminal Division at
No(s):  CP-05-CR-0000177-2015

BEFORE:   BOWES, J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:         **FILED: January 23, 2026**

Appellant, Todd Richard Ferry, appeals from the August 20, 2025, Order of the Court of Common Pleas of Bedford County denying his second petition under the Post-Conviction Relief Act (hereinafter "PCRA") as untimely filed. Appellant was convicted of attempted kidnapping[1] and several related charges following trial by jury and was subsequently sentenced to ten to twenty years imprisonment, which he is currently serving. After careful review, we affirm the denial of his second PCRA petition.

We have previously set forth the facts leading to Appellant's conviction as follows:

> On November 14, 2014, seventeen-year-old J.Z., a member of the Mennonite community, bicycled home from her job at a produce farm, accompanied by her friend, Ruthann. She and Ruthann

---

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. § 901(a); 18 Pa.C.S.A. § 2901(a).

parted ways when J.Z. reached the lane that led to her family's farm. After retrieving the mail, as she did every day, J.Z. travelled up the lane until a man grabbed her, knocking her off her bike. It was dark, and she was unable to see his face. He repeatedly said "get in the car, you're coming with me." The man held her by the shoulders and dragged her towards his truck, attempting to put something over her head and to open the door of the truck. J.Z. eventually pulled away from him and ran to the house, reporting the incident to her parents. J.Z.'s dress and vest were torn in the struggle, and she sustained bruises to her shoulders and knees. J.Z.'s father went out to the lane and found her bicycle, the mail scattered on the ground, and a pair of black sweatpants with a knot tied in them. Lab tests later revealed the presence of dark dog hairs on the pants.

The next day, J.Z.'s mother found an envelope in the mailbox. She called the State Police, who arrived and opened it in her presence. The unsigned letter read as follows.

["]I'm sorry about the wrestling match I had with you. I never meant no harm. I wanted you to talk to me. How does one non-Mennonite talk to a beautiful lady Mennonite? I fell in love with you and I seen you one year ago, and now . . . you'll never talk to me. I can't come to your house and ask your momma to date [her] daughter. I can't come to your place of work and ask you out. There is no way to approach you and now I have failed my only way. I hope you can understand. I still want to meet you and you don't need to fear me. I will never do that again. I promise. Sorry. Please forgive me.["]

In investigating the incident, Trooper Dana Martini of the Pennsylvania State Police interviewed people in the area, particularly other Mennonite girls who traveled by bicycle, and Appellant's name came up several times. Trooper Martini began surveilling Appellant, and observed that he drove a truck which matched the description of the one involved in the incident with J.Z., that he had a large, dark-colored dog, and that he visited several Mennonites on his day off. Based upon these observations, Trooper Martini decided to interview Appellant.

Appellant, a man in his mid-fifties, initially denied involvement in the incident, and claimed not to have any knowledge of the lane on which the attack occurred. Trooper Martini asked him to provide a buccal swab for DNA testing, and Appellant complied.

Appellant agreed to be interviewed by Corporal Edward Mahalko, and continued to deny his involvement for approximately the first hour of the second interview. After Corporal Mahalko confronted Appellant with the apology letter left in J.Z.'s mailbox, Appellant "changed his story." Appellant then admitted to being at the location and doing the things that the victim described. He stated he was there. He just wanted to talk to her. He thought she was another girl. He admitted that he grabbed her wrist. He admitted that he pulled on her wrist. He [stated] that he used the sweatpants that he left at the scene — he knew that they fell. . . . He said that he used them to conceal his identity so she didn't recognize him. And he said that he had written a note and took it back to her house[.]

Other Mennonite girls and young women were also the object of Appellant's attentions. Joel Amick, Appellant's coworker, told Trooper Martini that Appellant knew the names of all of the Mennonite girls, thought they were pretty, and specifically was interested in "Ruthie" and "the one that rode bikes with Ruthie." Appellant indicated that he knew where Ruthie and her friend worked. Mr. Amick advised Appellant to be careful about the girls under eighteen, and Appellant responded with a laugh.

Ruthann indicated that Appellant "was overly friendly" with her, bringing lunch to her and her coworkers at the market where she and J.Z. worked, inviting her to a Christmas party, and, on another occasion, inviting her to have pizza. Ruthann's sister, N.Z., when she was fourteen years old, did work for Appellant, including cleaning and husking corn. While driving N.Z. and her sister to his house, Appellant indicated that he wanted to take her to his cabin in the mountains so she could clean it. Another time, Appellant called N.Z. at home at night and asked her to meet him at the school "to talk with him."

Upon testimony reflecting these facts, a jury convicted Appellant of the crimes indicated above.

**Commonwealth v. Ferry**, 193 A.3d 1062 (Pa. Super. 2018)(internal citations omitted).

Appellant's trial commenced on March 17, 2016, and his judgment of sentence was entered on November 4, 2016. This Court affirmed Appellant's

conviction on June 8, 2018, *Id.*, and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on December 19, 2018. *Commonwealth v. Ferry*, 199 A.3d 342 (Pa. 2018). Appellant did not file a petition for writ of certiorari to the United States Supreme Court addressing this decision.

Appellant filed his first PCRA petition on March 13, 2019, counsel was appointed, and an amendment to the PCRA petition was subsequently filed on November 9, 2019. On February 26, 2020, Appellant's first petition was denied by the PCRA Court, and this Court affirmed that dismissal on February 19, 2021. *Commonwealth v. Ferry*, 249 A.3d 1164 (Pa. Super. 2021). Appellant did not file a petition for allowance of appeal to the Pennsylvania Supreme Court concerning this decision.

Appellant did, however, file a federal *habeas corpus* petition prompting review of this Court's 2018 affirmance of Appellant's judgment of sentence on direct appeal. Appellant's petition was denied on January 17, 2023, by the Honorable United States Magistrate Judge Keith A. Pesto. *Ferry v. Hainsworth*, 2023 WL 202504 (W.D. Pa. 2023); *see also Ferry v. Superintendent Laurel Highlands SCI*, 2023 U.S. App. LEXIS 20163 (3d Cir. 2023)(denying Appellant's request for certificate of appealability); *Ferry v. Hainsworth,* 144 S. Ct. 579 (2024)(denying petition for writ of certiorari to the United States Court of Appeals for the Third Circuit).

Appellant filed his second PCRA petition on April 4, 2025, ostensibly alleging newly discovered evidence. This second petition was the subject of a brief evidentiary hearing before the PCRA Court. N.T. PCRA Hearing 8/15/2025. Appellant advanced two claims in this petition, both presented in terms of ineffective assistance of counsel.

The first claim is predicated on a receipt which Appellant himself provided to his counsel in advance of trial, which he contends establishes his reason for being present at the scene of the crime, i.e. to deliver apple dumplings. *Id.* at 3. Appellant contends his trial counsel was ineffective for failing to produce this receipt at trial or otherwise utilize the same in Appellant's defense, and he alleges that direct appeal counsel was ineffective for failing to utilize this receipt on appeal.

The second claim is predicated on alleged contradictions in the trial testimony of several Commonwealth witnesses concerning whether or not a dress worn by the victim had been torn in the struggle. *Id.* at 4-5. Appellant admits that he was present for every day of his trial and thus that he heard the testimony as it was offered. *Id.* at 5-6. However, Appellant contends that, due to the trauma of enduring trial, he was not aware of "what [was] going on" at the time. *Id.* Further, the PCRA court noted that pictures of the dress at issue were presented at trial, and "there was a discussion about whether or not there were tears [in the dress] at the time of trial." *Id.* at 6-7.

In light of Appellant's awareness of the facts and evidence underlying his claims, the PCRA Court ruled that Appellant failed to establish that his second petition was subject to the newly discovered fact exception to the PCRA's one year time bar.

Appellant subsequently filed his notice of appeal of the PCRA Court's dismissal, and the instant appeal follows.

Appellant raises the following issues:

1. Was it error and/or abuse of discretion by the lower court to deny appellant's second (2nd) P.C.R.A. on time barr [sic]?
Answer – Yes

2. Was it error and/or abuse of discretion by the lower court to deny appellant's second (2nd) P.C.R.A. on withholding evidence?
Answer – Yes

3. Was it error and/or abuse of discretion by the lower court to deny appellant's second (2nd) P.C.R.A. on fabricated evidence?
Answer – Yes

Appellant's Brief at 4.

"When reviewing the propriety of an order granting or denying PCRA relief, this Court is limited to determining whether the evidence of record supports the determination of the PCRA court and whether the ruling is free of legal error." *Commonwealth v. Rachak*, 62 A.3d 389, 391 (Pa. Super. 2012). Further, "great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record." *Id.*

Under the PCRA, any petition, including second or subsequent petitions, must be filed "within one year of the date the judgment becomes final." 42 Pa.C.S.A. § 9545(b)(1). "A judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3); **see also** Sup. Ct. R. 13(1) ("[A] petition for a writ of certiorari to review a judgment in any case [. . .] entered by a state court of last resort [. . .] is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment.").

A petition filed in excess of one year of the date the judgment becomes final may yet be timely if the petition alleges, and the petitioner proves, one of the following conditions is met:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).

Further, even should a claim be subject to one of the exceptions outlined in the act, a petition raising such a claim must still "be filed

- 7 -

within one year of the date the claim could have been presented." 42 Pa.C.S.A. 9545(b)(2). "We emphasize that it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies." ***Commonwealth v. Marshall***, 947 A.2d 714, 719 (Pa. 2008)(citation omitted).

Here, Appellant's judgment of sentence became final on March 19, 2018, ninety days after the Pennsylvania Supreme Court denied his petition for allowance of appeal. Thus, his second PCRA petition, filed April 4, 2025, is facially untimely and it is incumbent upon Appellant to establish that he could not have filed his petition prior to March 19, 2019.

While the petition is entitled "Second (2nd) Petition for Post-Conviction Collateral Relief Under Newly Discovered Evidence," and thus ostensibly seeks to plead the exception as outlined in 42 Pa.C.S.A. § 9545(b)(1)(ii), the petition itself does not present a coherent argument as to why the newly-discovered fact exception applies. As noted above, Appellant did argue at the August 15, 2025, PCRA hearing that he was not aware of the facts underlying his claim due to trauma-induced obliviousness during his trial; however, the PCRA Court did not appear to credit his testimony.

While Appellant's brief includes several novel arguments as to why the PCRA court's denial of his petition as untimely was erroneous, none

are availing. Rather, all rely on his contention that he was unaware of the basis for his claims until October of 2024 due to trial-induced trauma. This Court will not revisit the credibility of Appellant's claim. ***Commonwealth v. Sandusky***, 2019 PA Super 27, 203 A.3d 1033, 1043 (Pa. Super. 2019)("The PCRA court's credibility determinations, when supported by the record, are binding on this Court"). Instead, we hold the PCRA Court's finding that Appellant was aware of the facts and evidence underlying his claims at time of trial is well-supported by the record. Therefore, we find the PCRA Court's dismissal of Appellant's petition as time-barred and not subject to the exception as outlined in §9545(b)(1)(ii) is free from legal error.

Further, to the extent Appellant attempts to argue on appeal that his petition was timely pursuant to the governmental interference exception as outlined in § 9545(b)(1)(i), after review of the record, we see no indication that this issue was presented to the PCRA Court. Thus, it is waived. "Any claim not raised in the PCRA petition is waived and not cognizable on appeal." ***Commonwealth v. Washington***, 592 Pa. 698, 927 A.2d 586, 601 (Pa. 2007); see also Pa.R.A.P. 302(a) ("issues not raised in the lower court are waived and cannot be raised for the first time on appeal"). Even should Appellant have preserved this issue, it is without merit. As Appellant was required to file the instant petition prior to March 18, 2019, the number of computers made available for

his use at the facility at which he was lodged in and after October of 2024 is of no moment.

As we find that the PCRA Court's denial of Appellant's petition as untimely is supported by the record and free from legal error, we will not address Appellant's second and third issues regarding the merit of the claims raised in his petition. ***Commonwealth v. Robinson***, 837 A.2d 1157, 1161 (2003)(*holding* "Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition.").

Wherefore, and for the foregoing reasons, we find that Appellant has failed to prove the applicability of any exception to the PCRA's one year time bar, and as such the PCRA Court did not err in denying his petition as untimely.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/23/2026

- 10 -